IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | :: | CRIMINAL ACTION |
| v. | : | |
| | : | Docket No. |
| JOSEPH WASHBURN | : | 0313 2:20 CR00102-001 |

**SENTENCING MEMORANDUM OF DEFENDANT JOSEPH WASHBURN**

The defendant, Joseph Washburn, by and through his attorney, Fortunato N. Perri, Jr. respectfully submits the following Memorandum to assist the Court in fashioning a just and fair punishment which is not greater than necessary to accomplish the fundamental objectives of sentencing as articulated in Title 18 U.S.C. § 3553(a).

**I.   INTRODUCTION**

On October 12, 2021, Joseph Washburn will appear before this Court to be sentenced in connection with the crimes to which he has pled guilty and accepted complete responsibility.

**II.   PROCEDURAL HISTORY**

On February 27, 2020 a seven count Indictment was returned in the US District Court for the Eastern District of Pennsylvania charging Joseph Washburn with use of an interstate commerce facility to entice a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422 [Count 1]; travel with intent to engage in illicit to engage sexual conduct in violation of 18 U.S.C.§ 2423 (b) [count 2]; manufacture and attempt to manufacture of child pornography, in violation of 18 U.S.C. §§ 2251 (a) and (e) [counts 3 through 5];

transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470 [count 6]; and possession of child pornography, in violation of 18 U.S.C. §§ 2252 (a) (4) (b) and(6) (1) [count 7].

In accordance with standard practices, at the time of the guilty plea, the Court ordered the preparation of a Pre-Sentence Investigation Report ("PIR"). The PIR was prepared by Senior U.S. Probation Officer Michael Lott. Mr. Washburn's counsel has reviewed the contents of the PIR and the Court can feel free to adopt the information as accurate set forth within it.

### III.   FACTUAL HISTORY

The facts and offense conduct relevant to Mr. Washburn's case are adequately set forth in the PIR at Paragraphs 22 through 40 and are not in dispute. Mr. Washburn admitted his role in the offense at his guilty plea hearing and has accepted complete responsibility for his crimes.

### IV.   CALCULATION OF THE DEFENDANT'S RECOMMENDED SENTENCING RANGE UNDER THE FEDERAL SENTENCING GUIDELINES

In the PIR, Officer Lott calculated Mr. Washburn's total offense level at 44. (PIR paragraphs 46-90). Mr. Washburn has no prior convictions, so he has a total of zero criminal history points and a criminal history category of I. (PIR paragraphs 91-97). According to the sentencing table at U.S.S.D.G. Chapter 5 Part A based on a total offense level of 44 and a criminal history category of I, the Guideline range for imprisonment is life imprisonment with a mandatory minimum sentence of fifteen years.

For the reasons discussed in detail below, the applicable sentencing range would be greater than necessary to achieve the goals of sentencing in Washburn's case because of the extraordinary circumstances of his personal history and mental health history. Mr. Washburn

respectfully requests the Court to rely on the pronouncements of United States v. Booker, 125 S.Ct. 738 (2005) and its progeny and exercise its discretion to depart from the advisory guidelines range and impose a sentence of 15 years. Such a sentence would be "sufficient but not greater than necessary" to comply with the purposes of punishment under the federal sentencing scheme.

V.   SENTENCING CONSIDERATIONS

As the Supreme Court has consistently asserted "(i)t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure." Gail v. United States, 552 U.S. 38, 52 (2007) quoting Koon v. United States, 518 U.S. 81, 113 (1996). This enduring principle was given new life in United States v. Booker, where the United States Supreme Court held that those provisions or the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory (18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines mandatory nature (18 U.S.C. § 3742(e) to be incompatible with the Sixth Amendment. 543 U.S. 220, 244 (2005). Accordingly, the Court severed and excised those provisions, thereby rendering the Guidelines "effectively advisory". Id at 245.

The 3rd Circuit has developed a three-step approach to sentencing that district courts must follow in the wake of Booker:

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.

> (3) Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculation under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (I(3rd Cir. 2006) quotation marks, brackets, and citations omitted), citing United States v. King, 454 F.3d 187, 194,96 (3rd Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3rd Cir. 2006). Thus, steps one and two mirror the pre-Booker scheme, in which any sentence outside the applicable sentencing range must be imposed pursuant to the departure framework provided by the Guidelines.

It is 18 U.S.C. § 3553(a), however, that ultimately governs the imposition of the defendant's sentence, with the Guidelines calculation operating as merely one factor amongst the variety of considerations listed in this statute. See Booker, 543 U.S. at 246. As the Supreme Court has emphatically stated, a sentencing judge "may not presume that the Guidelines range is reasonable." Gall, 128 S.Ct. at 596-97. Rather, it is the mandate in Section 3553(a) that "[t]he court shall impose a sentence sufficient, **but not greater than necessary**, to comply with purposes set forth in paragraph (2) of this subsection," that guides trial courts' sentencing determinations. 18 U.S.C. § 3553(a) (emphasis added). These purposes, as listed in 18 U.S.C. § 3553(a)(2), include "the need for the sentences imposed--

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed education and vocational training, medical care, or other correctional treatment in the most effective manner.

§Also, sentencing courts are directed to consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant (18) U.S.C.§ 3553(a)(1));
> (2) the kinds of sentences available; (18 U.S.C. § 3553(a)(3));

(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. (18 U.S.C. § 3553(a)(b); and
(4) the need to provide restitution to any victims of the offense (18 U.S.C. 3553 §(a)(7);

In addition to Section 3553, other statutory section also provide district courts with guidance in sentencing. In particular, in determining whether and to what extent imprisonment is appropriate based on Section 3553 (a) factors, the judge is required to "recongniz[e] that imprisonment is **not** an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) emphasis added)  As the 3rd Circuit has been adamant in emphasizing, "[t]he record must demonstrate the trial court gave meaningful considerations to the § 3553(a) factors. Cooper, 437 F.3d at 329.

## VI. BACKGROUND AND PERSONAL CHARACTERISTICS

Joseph Washburn, 23 years old, is the oldest child of Nathan and Tina Washburn. Born in Chesterfield, Va. and raised in Midlotian, Va. He has two sisters, Anastasia and Lauren. Mr. Washburn graduated from high school and completed courses at John Tyler Community College. At the time of his arrest, he was employed as an Electrician's Apprentice. Sadly, Mr. Washburn experienced an extremely traumatic childhood which included verbal and physical abuse by both parents, as well as being sexually assaulted by his maternal grandfather at a very young age. Both of Mr. Washburn's parents were terrible alcoholics and constantly insulted and beat him when they were intoxicated. His father always told Mr. Washburn that he wasn't his biological father and his mother told him that she didn't love him over and over again. It should come as no surprise that Mr. Washburn has suffered from significant mental health issues from the physical and emotional pain he's suffered at the

hands of his parents. His diagnoses of severe depression and effects of Post Traumatic Syndrome along with a finding of Autism Spectrum Disorder are discussed in reports prepared by Elliot Atkins. Ed. D and Ernie Gonzalez, Jr. Ph.D.

Dr. Atkins' report details how Mr. Washburn's childhood filled with physical and emotional abuse has impacted his behavior during the commission of the crimes in this matter.

Dr. Atkins writes:

> Joseph presents with neurodevelopmental deficits that contributed to his difficulties in social functioning over the years as well as to the instant offenses. His condition interfered with his ability to fully appreciate the social rules and mores that most of us see with ease. In contrast to his real-life encounters, where his quirkiness and oddities interfered, he soon learned that on-line, he wasn't alone with his fixated specialized interests. On the Internet, his social immaturity, facility for fantasy and his poor sense of social rules did not interfere with his being able to connect with others. Unfortunately, Joseph's impaired sense of social judgement permitted him to bypass the naturally occurring obstacles between an adult and a teenager. Functioning socially and emotionally at the level of an adolescent, he had common ground with those much younger than himself, including the minor. Unfortunately, his neurological condition precluded his being able to enact the ordinary constraints that would be second nature to his neurotypical age-mates as he failed to appreciate both the moral and the legal wrongfulness of a relationship with someone who, chronologically, was that many years younger than himself.
>
> Not the least of the factors contributing to Joseph's developing a romantic relationship with the minor was the damage that had been done to him by the unconscionable physical and emotional abuse that he had endured at the hands of his father and the psychological abuse that he had endured from his mother. His developmental years were marked by rejection, abuse and alienation both within and outside of his family home. His ability to develop the requisite confidence and autonomy that would enable him to extricate himself from his intolerable home life was significantly compromised by his ASD. Despite his profound social deficits, however, Joseph had a powerful need to connect to others, and he yearned for acceptance and love. Precluded from finding such a relationship in the real world, Joseph spent his life online, establishing the connections that were so elusive in that real world.

Dr. Atkins further opined that Mr. Washburn will benefit from a specified treatment plan which will aid in the development self- awareness which he lacked at the time of his criminal acts.

Dr. Atkins writes:

> It is my professional opinion that, with proper treatment, Joseph will be able to develop the skills and self-awareness that were so critically lacking at the time of his offending. I am recommending that he become involved in a program of individual cognitive behavioral psychotherapy. I am also recommending his participation in group psychotherapy directed towards participants' interaction with others. With the support of the group, people like Joseph are able to feel safe in discussing and practicing new ways of thinking and employing the new skills that they have been acquiring during treatment. I am hopeful that Joseph will be in a position to receive this treatment sooner, rather than later.

### VII. APPLICATION OF THE STATUTORY FACTORS AS SET FORTH IN 18 U.S.C. § 3553(A)

Section 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph 2. Section 3553(a) directs sentencing courts to consider such factors as (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; and (6) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

Today, the Courts are free to disagree, in individual cases, with the recommended Guideline Range and instead impose a sentence that is reasonably supported by the §3553(a) factors and which is sufficient but not greater than necessary. With these principles in mind, the defendant respectfully urges the Court to impose a sentence that will not exceed the mandatory minimum applicable in this matter.

#### A. Personal History and Offense Characteristics

Joseph Washburn has lived most of his life not only free of unlawful behavior, he has also maintained a consistent employment history. The serious nature of these charges is fully accepted by Mr. Washburn as well as his responsibility for the unlawful conduct. Mr. Washburn believes that he will avail himself to the resources of the Bureau of Prisons

and any necessary treatment on his path toward rehabilitation. He suffers from a mental health history significant for long-standing depressive and PTSD disorders that sadly, remained undiagnosed and untreated until he was seen by mental health practitioners after his arrest in this matter. Mr. Washburn's sincere desire toward understanding his conduct herein and resolve to work through the emotional trauma and mental health disorders will significantly reduce concerns of re-offending.

Since his arrest, Mr. Washburn has not only sought treatment and cooperated with rehabilitating himself with regard to the mental health basis for his conduct, he has also worked hard to better himself as a person. Mr. Washburn has completed several educational programs offered at the Federal Detention Center while incarcerated.

## B. The need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

Mr. Washburn's acceptance of responsibility and dedicated approach toward treatment and rehabilitation are a measure of his appreciation for the gravity of his offense. His incarceration, public shame, loss of career and ultimately, his impending registration under the SORNA guidelines reflect the seriousness of his offense and promotes the necessity for respect of the law. Depriving Mr. Washburn of his liberty for at least fifteen years provides adequate punishment but is it respectfully suggested that a period of incarceration in excess of fifteen years is greater than necessary to achieve a just sentence. A sentence within the applicable sentencing guidelines would be unjust particularly now that Mr. Washburn's mental health disorders have been identified and he has responded with an incredible focus on addressing the disorders so that he will never re-offend.

### C. The need to afford adequate deterrence to criminal conduct and protect the public from additional criminal conduct of the defendant.

Following a comprehensive evaluation, Dr. Atkins concluded that certain mental health and cognitive issues led Mr. Washburn to engage in conduct arising from the unconscionable physical and emotional abuse that he endured at the hands of his father and mother. Ultimately, Dr. Atkins concludes that with a treatment plan as he has set forth, Mr. Washburn will be able to develop the skills and self-awareness that were critically lacking at the time of the offenses. As discussed above, Mr. Washburn is fully engaged into understanding the underlying disorders that lead to his disquieting conduct and is energized to full participation in treatment. Mr. Washburn's commitment to rehabilitation and otherwise strong character background provides reliable assurance that society will be protected from him by treatment rather than excessive incarceration beyond the mandatory minimum.

Moreover, with the severe penalties of the SORNA registration requirement, Mr. Washburn's sentence will be a deterrent to others in the community as he will be required to register as a sex offender with the State Police and have his status publicly disclosed. He will also be required to update his information regularly with the state police. Mr. Washburn's status as a sex offender will be accessible by internet to the public at large. Any non-compliance would expose Mr. Washburn to severe additional criminal penalties.

It is respectfully suggested that had Mr. Washburn been diagnosed and treated for his mental health disorders, he never would have offended. Seeking mental health treatment must be encouraged rather than feared. Fortunately, Mr. Washburn has now fully embraced mental health treatment. A harsh sentence herein may serve to discourage afflicted

individuals from seeking treatment. Prevention may develop with a greater understanding and awareness of the connection between mental health disorders and his self- hatred.

### VIII. CONCLUSION

Joseph Washburn stands as the mercy of this Court a remorseful and penitent man. Based on the aforementioned reasons, we urge the Court to impose a sentence of fifteen years incarceration in his case. Such a sentence would be "sufficient but not greater than necessary" to accomplish the purposes of sentencing set forth in the United States Sentencing Guidelines.

Respectfully submitted,

s/ FORTUNATO N. PERRI, JR.<br>FORTUNATO N. PERRI, JR.

## CERTIFICATE OF SERVICE

  FORTUNATO N. PERRI, JR., Esquire, hereby certifies that t true and correct copy of the within Sentencing Memorandum has been served electronically upon:

THE HONORABLE MARK A. KEARNEY

ALEXANDRA M. LASTOWSKI, ESQ.
ASSISTANT UNITED STATESS ATTORNEY

                s/FORTUNATO N. PERRI, JR.
                FORTUNATO N. PERRI, JR.
                Attorney for Defendant